IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TONY G. PRICE                                                                                        PLAINTIFF

V.                                                                              CAUSE NO. 1:15-CV-36-SA-DAS

GREG ELDER and
THE CITY OF BALDWYN, MISSISSIPPI                                                          DEFENDANTS

MEMORANDUM OPINION

Plaintiff Tony Price brings this action pursuant to Section 1983, seeking to recover damages from Officer Greg Elder and the City of Baldwyn under theories of First Amendment retaliation and Fourth Amendment excessive force. Before the Court now is Defendants' Motion for Partial Summary Judgment [69], in which they seek dismissal of the First Amendment claim against Officer Elder and all claims against Baldwyn. The Court has considered the motion, responses, rules, and pertinent authorities, and finds as follows:

*Factual and Procedural Background*

Baldwyn Police Officer Greg Elder arrested Tony Price twice within three months in 2013. The first arrest, in March 2013, was for DUI and driving with a suspended license. During the course of the arrest, Plaintiff stated that he was going to complain to Baldwyn's mayor that Officer Elder was "always harassing" him. Plaintiff was ultimately convicted on both charges.

The second arrest, in May 2013, forms the basis for Plaintiff's claims in this suit. Plaintiff drove with a suspended license to his cousin's house, exited his vehicle, and knocked on his cousin's door. Officer Elder pulled into the driveway behind Plaintiff, got out of his patrol car, and told Plaintiff to get back in his truck and that he was going to charge him with driving with a suspended license. Then, according to Plaintiff's deposition testimony, the following exchange took place:

> I'm going to talk to the mayor about you. Every time you see me you mess with me. I don't know why he arrest me every time he see me. That's what I told him. He said something, cussed or something. Put your hands behind your damn back.

Officer Elder then allegedly handcuffed Plaintiff, hit him behind his neck with his fist, and knocked Plaintiff to the ground. Plaintiff testified that while on the ground, Officer continued to strike Plaintiff while looking around to ensure no one was watching. Next, according to Plaintiff, Officer Elder took him to the patrol car, picked him up, and slammed him back to the ground onto his shoulder, before again hitting Plaintiff in the neck and putting his knee into Plaintiff's rib cage. Pursuant to this second arrest, Plaintiff was convicted of disregarding traffic devices, seatbelt violation, and resisting arrest.

Plaintiff claims that Officer Elder's actions violated the First Amendment as retaliation for Plaintiff's threats to complain to the mayor. Plaintiff further alleges that Officer Elder's actions constitute excessive force prohibited by the Fourth Amendment. Plaintiff seeks damages pursuant to Section 1983 against the City of Baldwyn and Officer Elder in his individual capacity. Defendants now request dismissal of the First Amendment claim against Officer Elder, and of all claims against the City of Baldwyn.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

**First Amendment Retaliation**

To prevail on his First Amendment retaliation claims against Officer Elder and the City of Baldwyn, Plaintiff must demonstrate that he "engaged in conduct protected by the First Amendment" and that "the government took action against [him] because of that protected conduct." *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004) (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996)); *Rogers v. Louisville-Winston Cnty. Airport Authority*, 1:13-CV-197-SA, 2015 WL 1505843, at *5 (N.D. Miss. Mar. 31, 2015).

Plaintiff claims that he engaged in protected speech when he twice told Officer Elder he was going to complain to the mayor, but there is some confusion in the briefing regarding the specific government action on which Plaintiff predicates his retaliation claim. To be clear,

Plaintiff does not assert in his summary judgment response that Officer Elder *arrested* him for his statements. Such a claim would be foreclosed by the doctrine enunciated in *Heck v. Humphrey*, 512 U.S. 477, 486, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), which generally precludes a plaintiff from maintaining a cause of action under Section 1983 that would call into question the lawfulness of a criminal conviction.[1] Instead, Plaintiff alleges that the excessive force, occurring after the arrest, was imposed by Officer Elder as retaliation for his speech. In effect, Plaintiff's First Amendment theory is based on the same event he alleges as a basis for recovery under the Fourth Amendment. For the following reasons, the Court holds that the First Amendment may not be invoked in this manner.

In *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), the United States Supreme Court recognized that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." A narrow reading of *Graham* would suggest that only the "more generalized" legal theory of "substantive due process" would be usurped by the Fourth Amendment, and that the reasoning would not extend to First Amendment cases such as this. *See id.*, 109 S. Ct. 1865. But in *Tennessee v. Garner*, 471 U.S. 1, 5, 7-22, 105 S. Ct. 1694, 85 L. Ed. 2d 1, (1985), the case on which the *Graham* Court explicitly relied, the Supreme Court exclusively conducted a Fourth Amendment analysis even though the complaint also alleged violations of due process and other constitutional provisions, namely the Sixth and Eighth Amendments.

---

[1] A claim for First Amendment retaliation based on an arrest requires proof that there was no probable cause for the arrest. *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008); *see also Reichle v. Howards*, --- U.S. ---, 132 S. Ct. 2088, 2095-96, 182 L. Ed. 2d 985 (2012). Plaintiff's unimpeached convictions for disregarding traffic devices, resisting arrest, and seatbelt violation serve as binding evidence that Officer Elder had probable cause to arrest Plaintiff. *Heck*, 512 U.S. at 486, 114 S. Ct. 2364.

Multiple lower federal courts, including this one, have extended *Graham* to preclude First Amendment claims based on alleged excessive force employed during an arrest. *See Anderson v. Franklin Cnty., Mo.*, 192 F.3d 1125, 1132 (8th Cir. 1999) (holding that alleged excessive force and arrest "plainly implicates the protections of the Fourth Amendment and that no cognizable § 1983 First Amendment claim has been asserted"); *Jenkins v. Town of Vardaman, Miss.*, 899 F. Supp. 2d 526, 534 (N.D. Miss. 2012) ("An allegation that excessive force was used in the course of making an arrest is clearly a Fourth Amendment, not a First Amendment, matter."); *Kirk v. Bostock*, No. 09-CV-15018-DBH, 2011 WL 52733, at *3 (E.D. Mich. Jan. 7, 2011) (granting summary judgment on First Amendment claim based on "the same set of facts" as the Fourth Amendment excessive force claim); *Montoya v. City of Albuquerque*, No. 03-CV-0261-JB, 2004 WL 3426436, at *10 (D.N.M. May 10, 2004) ("The Court believes that allowing Plaintiffs to proceed with their First Amendment retaliation claim would unnecessarily complicate excessive force claims brought under the Fourth Amendment and would be contrary to the Supreme Court's holding in *Graham v. Connor*."); *Lagrone v. Hall*, No. 91-CV-7133-ACW, 1992 WL 350702, at *3 (N.D. Ill. Nov. 23, 1992) (dismissing First Amendment claim based on excessive force, and noting "that the Fourth Amendment is the only appropriate vehicle for relief on a claim of excessive use of force during an arrest").

In accord with this clear weight of authority, the Court finds that the Fourth Amendment functions as the exclusive remedy for Plaintiff's assertion that excessive force was used in connection with his arrest. His First Amendment retaliation claims must be dismissed.

**City of Baldwyn's Liability**

Having dismissed the First Amendment claims, the Court turns to the City of Baldwyn's potential liability for Officer Elder's alleged use of excessive force. The United States Supreme

5

Court first recognized that local governments may be liable under Section 1983 in the landmark case of *Monell v. Department of Social Security Services of City of New York*, 436 U.S. 658, 663, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *Monell* liability extends to the government's "*own illegal acts*" that either "subject a person to a deprivation of rights or cause a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (citing *Monell*, 436 U.S. at 692, 98 S. Ct. 2018; *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)) (internal alterations and quotation marks omitted). A government entity "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691, 98 S. Ct. 2018.

Plaintiff originally pursued *Monell* liability, alleging a pattern-or-practice of similar constitutional violations and failure-to-train Officer Elder, but he now concedes that these theories are not viable. His *Monell* claims are accordingly dismissed with prejudice.

Plaintiff nonetheless seeks to hold Baldwyn liable for Officer Elder's use of excessive force by way of the Mississippi Tort Claims Act ("MTCA"). Plaintiff conflates the similar but distinct concepts of *respondeat superior* (or vicarious liability) and indemnity. He requests a court order requiring indemnity for Officer Elder, but he makes arguments and cites the MTCA provisions concerning *respondeat superior* liability for excessive force.

Importantly, *respondeat superior* focuses on Baldwyn's tort liability to Plaintiff for Officer Elder's actions. *See* MISS. CODE ANN. § 11-46-5(1) (establishing government entity's liability for certain actions of its officials); BLACK'S LAW DICTIONARY 1055 (defining "*respondeat superior*" as "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency"). In contrast, indemnity focuses on Baldwyn's potential obligation to Officer Elder to pay damages

6

for which he may become liable through a judgment. *See* MISS. CODE. ANN. § 11-46-7(3) (establishing government entity's duty to defend and indemnify its officials from certain liabilities); BLACK'S LAW DICTIONARY 886 (10th ed. 2014) (defining "indemnity" as "[a] duty to make good any loss, damage, or liability incurred by another").

To the extent that Plaintiff pursues a *respondeat superior* theory, his claims against Baldwyn must be dismissed. The MTCA establishes that government entities are liable for torts of their employees that act "within the course and scope of their employment[,]" MISS. CODE ANN. § 11-46-5(1), subject to a $500,000 damages limitation. MISS. CODE ANN. § 11-46-15. It further provides that no government employee "shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." MISS. CODE ANN. § 11-46-7(2). Plaintiff contends these state-law *respondeat superior* provisions are incorporated into Section 1983 for purposes of Baldwyn's liability on the claim against Officer Elder.

This position fails for reasons explained by the Fifth Circuit just one year after the Supreme Court decided *Monell*. *See Baskin v. Parker*, 602 F.2d 1205, 1207-08 (5th Cir. 1979). Rejecting an argument that a sheriff could be held liable in *respondeat superior* under Louisiana law for the unconstitutional search conducted of his deputy sheriff, that Court reasoned:

> Using the varying contours of local law to define the reach of a federal statutory right of action would make the availability of vicarious liability depend upon the location and, in some states, the nature of the tort. These incidental, irrelevant vagaries should not mold the contours of this national constitutional tort. Adopting each state's law into [Section] 1983 would create a Lex loci doctrine of *respondeat superior* granted or withheld, on the basis of state rather than federal policy.

*Id.*

Incorporating the MTCA's vicarious liability provisions into Section 1983 here would have graver unconstitutional consequences than those contemplated in *Baskin*. If the City of

7

Baldwyn were held liable under Plaintiff's theory, then Officer Elder would be relieved from individual responsibility for his alleged constitutional tort, MISS. CODE ANN. § 11-46-7(2), and any damages against the City would be limited to $500,000. MISS. CODE ANN. §§ 11-46-5(1); 11-46-15(1)(c). This result would be wholly incongruent with Section 1983's purposes of compensating "persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 590-91, 98 S. Ct. 1991, 56 L. Ed. 2d 554 (1978) (numerous citations omitted).

Thus, pursuant to *Monell* and its progeny, "[l]iability under the doctrine of *respondeat superior* is not cognizable" in this Section 1983 case. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citing *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002)).

If, however, Plaintiff seeks to enforce the MTCA's indemnity provision against Baldwyn, the Court is presented with a more novel question. The MTCA provides that government entities "shall be responsible" for defending and indemnifying damages claims "against an employee ... arising out of any act or omission within the course and scope of his employment . . . ." MISS. CODE. ANN. § 11-46-7(3). The Court recently noted its reluctance to apply this indemnity provision where, as here, a Section 1983 plaintiff seeks to recover from a government entity. *Nelson v. Sparks*, No. 1:15-CV-26-SA, 2016 WL 55350, at *2 & n.1-3 (N.D. Miss. Jan. 4, 2016). As the Court explained, it is unclear whether the indemnity provision applies to Section 1983 claims, whether such application would be constitutional, and whether Plaintiff possesses standing to raise indemnity. *Id.* (numerous citations omitted). An additional question here is whether a claim for MTCA indemnity would be subject to that statute's ninety-day notice provision. *See* MISS. CODE ANN. § 11-46-11.

Given these significant concerns, and the lack of arguments addressing them, the Court will require additional briefing before determining whether MTCA indemnity is available here. The briefing schedule will be set forth in a separate order, issued this day.

For the above reasons, Plaintiff's *Monell* claims and his MTCA *respondeat superior* claim against Baldwyn are dismissed, but Baldwyn will remain in this lawsuit until the Court rules on the indemnity question.

*Conclusion*

Defendants' Motion for Partial Summary Judgment [69] is GRANTED IN PART and DEFERRED IN PART. Plaintiff's First Amendment claims are dismissed, as are his *Monell* and *respondeat superior* claims against Baldwyn.[2] The Court requires additional briefing to resolve Plaintiff's claim, if any, for MTCA indemnity against Baldwyn. A separate order to that effect shall issue this day.

SO ORDERED, this the 29th day of March, 2016.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[2] Defendants previously filed a Motion to Dismiss for Failure to State a Claim [37], seeking dismissal of the precise claims at issue for summary judgment. Given the way the Court rules today, Defendants' earlier motion to dismiss is moot.